## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  14-CIV-61605-BLOOM/Valle

MANUEL ANTONIO AGUILAR a/k/a
RAUL AGUILAR and all other similarly
situated under 29 U.S.C. 216(B),

      Plaintiff,

v.

UNITED FLOOR CREW, INC.,
PRESIDENTE SUPERMARKET #18,
PRESIDENTE SUPERMARKET #27,
DENNIS LARIOS,

      Defendants.

_____/

### ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** is before the Court on Defendants United Floor Crew, Inc. and Dennis

Larios' (the "United Floor Defendants") and Defendants Presidente Supermarket #18 and

Presidente Supermarket #27's (the "Presidente Defendants")( together, "Defendants") motions

for involuntary dismissal of Plaintiff Manuel Antonio Aguilar a/k/a Raul Aguilar's ("Plaintiff")

Second Amended Complaint, ECF No. [30]. Each set of Defendants filed separate motions.  ECF

No. [55] (the "United Floor Motion"); ECF No. [56] (the "Presidente Motion", together the

"Motions to Dismiss").   The Court has carefully considered the Motions to Dismiss, all

supporting and opposing submissions, the record in this case and applicable law.  The Court also

had the benefit of oral argument from the parties and statements from Plaintiff himself at a

hearing held on the Motions on May 13, 2015 (the "Hearing").

A rose by any other name may smell as sweet.  *See* William Shakespeare, "Romeo and

Juliet," act 2, sc. 2.  People, not so much.  The Plaintiff in this matter, who originally filed his

CASE NO. 14-CIV-61605-BLOOM/Valle

action under the name of "Raul Aguilar," stood before the Court and stated his name to be "Manuel Antonio Aguilar."  Two hours and several iterations later, he identified himself as "Manuel Antonio Aguilar Salazar."  This encapsulates the misinformation and confabulation to which Plaintiff has subjected these proceedings.  Now, ten months into the case, after two full-length depositions, days before the close of discovery, and only a few months before trial, the Defendants, the Court and Plaintiff's own counsel are still left wondering if the real plaintiff has stood up. "A trial is not a masquerade party nor is it a game of judicial hide-n-seek where the plaintiff may offer the defendant the added challenge of uncovering his real name.  We sometimes speak of litigation as a search for the truth, but the parties ought not have to search for each other's true identity." *Zocaras v. Castro*, 465 F.3d 479, 484 (11th Cir. 2006).  Under the standard articulated and for the reasons set forth below, this case is dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b).

## I.     BACKGROUND

Plaintiff filed his original Complaint on July 11, 2014, ECF No. [1], asserting claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  The Complaint identified the plaintiff only as "Raul Aguilar."  On August 11, 2014, Plaintiff filed a Statement of Claim, stating his total claim in the amount of $64,858.56 (overtime claims of $5,386.56 and $4,778.40, minimum wage claims of $13,253.12 and $9,011.20, for a total claim of $32,429.28 and liquidated damages of the same).  ECF No. [10].  The Statement of Claim identified the Plaintiff as "Raul Aguilar."  Plaintiff thereafter filed an Amended Complaint of right on August 18, 2014, ECF No. [12], also identifying himself as "Raul Aguilar."  On August 27, 2014, Magistrate Judge Alicia O. Valle issued an order requiring all parties to appear before her at a settlement conference on October 6, 2014.  ECF Nos. [15], [23].  At that settlement conference, Plaintiff

CASE NO. 14-CIV-61605-BLOOM/Valle

appeared and represented himself to Judge Valle as "Raul Aguilar;" Judge Valle consequently entered a notice stating that the Plaintiff was present at the settlement conference. ECF No. [24]. On October 14, 2014, Plaintiff filed a motion for leave to file a Second Amended Complaint to add the Presidente Defendants, which the Court granted over Defendant United Floor's objection. ECF Nos. [26], [29]. Both the proposed Second Amended Complaint, ECF No. [26-1], and the Second Amended Complaint filed on December 1, 2014, ECF No. [30], identified the Plaintiff as "Raul Aguilar."

On December 29, 2014, Plaintiff sought leave to amend his name and the case caption through interlineation. ECF Nos. [38] (the "Motion to Amend by Interlineation"). Plaintiff explained that his "name and caption of this lawsuit is incorrectly listed" – that he "was known to Defendants as Raul Aguilar when he worked for Defendants" but that his "full name is Manuel Antonio Aguilar." Motion to Amend by Interlineation ¶¶ 4-5. Defendants did not oppose the motion and the Court granted it that same day. ECF No. [39]. The case caption was changed to reflect "Manuel Antonio Aguilar a/k/a Raul Aguilar" as the Plaintiff.

On January 15, 2015 – two weeks after the Motion to Amend by Interlineation was granted and the Plaintiff's name was "corrected" – Plaintiff, by and through his counsel, served Plaintiff's sworn and signed responses to Defendants' first set of interrogatories, ECF No. [55-1] (Plaintiff's "Interrogatory Responses"). The Interrogatory Responses bear a January 12, 2015 signature date. In response to the first interrogatory, Plaintiff identified himself as "Raul Aguilar," and stated that "[t]hese interrogatories were recited to me by my attorney in English and were then translated to me in Spanish. I responded in Spanish and my answer was dictated to my attorney in English for it to be recorded." In response to the thirteenth interrogatory, Plaintiff disclosed his involvement as a plaintiff in an FLSA suit captioned *Aguilar v. Hialeah*

CASE NO. 14-CIV-61605-BLOOM/Valle

*Tropical Supermarket, Inc.*, Case No. 13-21823 (S.D. Fla.) (the "*Tropical* Suit"). The plaintiff in that suit is identified as "Manuel Aguilar." Plaintiff signed the Interrogatory Responses as "Raul Aguilar." The Interrogatory Responses were notarized by Aleida Menir, a secretary for Plaintiff's counsel, who attested that Plaintiff presented a State of Florida Identification Card bearing the name "Raul Aguilar." In addition, an interpreter acknowledged translation of the Interrogatory Responses and that "Raul Aguilar," also identified through a State of Florida Identification Card, fully understood and affirmed the contents of the Interrogatory Responses.

Plaintiff was deposed for the first time in this matter on March 2, 2015. The same individual who was present at the October 6th settlement conference appeared, was sworn as "Raul Aguilar," presented a State of Florida Identification Card to that effect, and gave several hours of testimony.

Plaintiff was deposed a second time on April 9, 2015. *See* ECF No. [49] (granting in part Defendants' request and ordering a total of nine hours for the Plaintiff's deposition); ECF No. [55-2] (transcript of the April 9th deposition). The same individual who was present at the October 6th settlement conference and who was first deposed on March 2nd appeared, was again sworn by the court reporter as "Raul Aguilar," and presented a State of Florida Identification Card bearing that name. However, during his deposition, Plaintiff testified that his name was not and had never been "Raul Aguilar," that he had never been known as "Raul Aguilar" in his native country of Guatemala, and that the State of Florida Identification Card and a social security card bearing that name were forgeries:

> Q  Okay. Presently, do you have a Social Security number?
> A  No.
> . . .
> Q  Do you have a Florida I.D. or Florida driver's license?
> A  Yes.
> Q  Okay. Which one?

CASE NO. 14-CIV-61605-BLOOM/Valle

A    I didn't bring it.  I didn't bring it at this time.
Q    I didn't ask you if you brought it.  I asked you:  Which of the documents do
     you have?
A    I.D.
Q    Florida-issued I.D.; is that your answer?
A    Yes.
Q    How did you obtain the Florida I.D.?
A    With a birth certificate from my country.
Q    When you started working for United Floor Crew, did you present that I.D.
     as proof of identification?
A    No.
Q    What about when you started working for Presidente 18, did you do that?
A    No.
Q    Did you present any document to UFC or Presidente 18?
A    To Presidente.
Q    Which document did you present?
A    I.D.
Q    An I.D. other than the Florida I.D.?
A    Documents to be able to work.
. . .
Q    What was the answer again?
A    I presented to Presidente Supermarket a document to work.
Q    What type of document?
A    What you use to work.
Q    So it was a document that was issued to you by the government of the United
     States?
A    No.
Q    Who issued that document that you presented?
A    I don't know.
Q    How did you obtain the document?
A    It's something that you receive and you don't know who sends it to you.
Q    Do you know who sent it to you?
A    No.
Q    Did you pay for that document to be sent to you?
A    Yes.
Q    Do you know who you paid for the document to be sent to you?
A    No.
Q    Is it your belief that the document you presented to Presidente was an official
     document presented by the United States government?
A    No.
…
Q    So when you filed the complaint under the name of Raul Aguilar, you knew
     that that name was not your real name, correct?
A    That is my real name with Presidente Supermarket.
Q    Was it the real name that you were born with?
A    Can you repeat the question?

5

CASE NO. 14-CIV-61605-BLOOM/Valle

> Q   Was Raul Aguilar the real name that you were born with?
> A   No.
> …
> Q   Have you ever had any identification document from your country issued to you?
> A   Yes.
> Q   Okay.  And what name was on that identification number or identification document?
> A   Manuel Antonio Aguilar.
> Q   Have you ever been known by the name of Raul Aguilar in Guatemala before you came to the United States?
> A   No.
> …
> Q   Did you provide this Social Security card to Presidente 18?
> A   To Joan Hernandez.
> Q   And did you provide it to Joan Hernandez for purposes of obtaining work?
> A   Yes.
> Q   To your knowledge, is this Social Security card a valid Social Security card issued by the United States government?
> A   I don't know.  That's what Joan said that he was going to give me work with that.
> Q   Did Joan provide you this Social Security card?
> A   No.
> Q   How did you obtain this card?
> A   I don't know.
> Q   You don't recall at all how it ended up in your hands?
> A   We don't even know how it ends up in your hands.
> Q   It just comes from thin air?  It just falls into your hand?
> A   A bird brings it, a pigeon.

4/9/15 Dep. Tr. 10-15, 123-126.  Plaintiff testified that an identification document issued by Guatemala identified him as "Manuel Antonio Aguilar."  *Id*. at 15.  He then testified that, using an identification card provided by the Guatemalan consulate, he opened and maintained a bank account with Wells Fargo under the name "Manuel Antonio Salazar" – which he affirmed was his "full name from Guatemala."  *Id*. at 128-131.  He affirmed that did not use the last name "Salazar" in the United States," but rather, stated that he "mostly" went by "Manuel Aguilar" or "Raul Aguilar."  *Id*.

> Q   I'm going to ask you again:  Have you had a bank account at any time between March 23rd, 2012, and July 31st, 2014?

A    Yes, I had a bank account, but the exact date I don't remember.
Q    Was it between those – the period that I gave you?
A    I don't know the date exactly, but I had an account.
Q    Where was the account?
A    In Wells Fargo in Lake Worth.
Q    Do you know the bank account number?
A    No.
Q    Is it still open?
A    I don't know.  I don't know.  I don't know.  That's the truth.
Q    Under which name was the bank account?
A    Manuel Aguilar.
Q    Did you provide a Social Security number to open the bank account?
A    No.
Q    Did you provide an identification to open the bank account?
A    Yes.
Q    Which identification did you provide?
A    I.D.
Q    Which I.D.?
A    The I.D. that was given to me at the Guatemalan consulate.
. . .
Q    When you gave the bank account, the bank your identification, did it say Manuel Aguilar or was there any middle initial in it or a name?
A    Manuel Antonio Salazar.
Q    Is that your full name from Guatemala?
A    Yes.
Q    Have you ever gone by the last name Salazar here in the United States?
A    No, mostly as Manuel Aguilar.

*Id*. at 128-130.

Consistent with the Motion to Amend by Interlineation, Plaintiff explained the use of the name "Raul Aguilar" in his initial pleading was a function of his use of that name in his employ with the Presidente Defendants.  *Id.* at 7-8, 13-14.  He further testified that the Presidente Defendants were complicit in his use of a false name and fake papers for purposes of his employment.[1]  *Id.* at 123-126.

Plaintiff also responded to questions at the April 9th deposition about the January 12th Interrogatory Responses.  He testified that he had never seen the first nine pages of that

---

[1] Defendants deny any such complicity or knowledge.

CASE NO. 14-CIV-61605-BLOOM/Valle

document (all but the pages bearing his signature); that the document was not translated into Spanish before he signed it; that he used the name "Raul Aguilar" to print and sign his name knowing it was not his true name; and that he did not, in fact, present any identification to the notary public who notarized his signature bearing the name "Raul Aguilar." *Id*. at 30-33.

Defendants filed their Motions to Dismiss on April 21 and 22, 2015, arguing that Plaintiff's misidentification and perjury were knowing and willful, constituted fraud on the court, and had effectively rendered the entire eight month discovery process in this case – undertaken at great time and expense by Defendants and their counsel – useless.

Responding in opposition to the Motion to Dismiss, Plaintiff submitted to the Court a sworn and signed affidavit dated April 28, 2015.  ECF No. [59-1] (the Plaintiff's "Affidavit").  In the Affidavit, Plaintiff states his name to be "Manuel Antonio Aguilar." *Id*. ¶ 1.  He used the name "Manuel Antonio Aguilar" to sign the Affidavit.   The Affidavit is notarized and acknowledged by the same notary and interpreter used for the Interrogatory Responses.  The notary – Aleida Menir, again, a secretary for Plaintiff's counsel – represented that the affiant presented a Guatemalan consular card for identification as "Manuel Antonio Aguilar."  The interpreter stated that "Manuel Antonio Aguilar" was "personally known" to her.

In the Affidavit, Plaintiff "clarifie[d]" that his "birth name" is "Manuel Antonio Aguilar-Salazar."  *Id*. ¶ 5.  Regarding his deposition testimony – that his "full name in Guatemala" is "Manuel Antonio Salazar" – he explained that "Manuel Antonio Salazar is a 'full' name in that it includes a first, middle and last name." *Id*.  He further stated that

> In Guatemala, as well as many Latino cultures, often persons hyphenate their last names (in my case Aguilar-Salazar).  Aguilar is my father's last name and Salazar my mother's, and normally the father's name takes precedence for identification purposes.  Also, in the United States, normally persons do not hyphenate their names.  Thus, I consider Manuel Antonio Aguilar to be my correct name.

CASE NO. 14-CIV-61605-BLOOM/Valle

*Id.* ¶ 6.  He also claimed that the Presidente Defendants "knew and were aware that [his] name is Manuel Antonio Aguilar;" that he showed them documentation bearing that name during the hiring process; and that they told him to use a different name and corresponding social security card because, in fact, he does not have a social security number in the name of "Manuel Antonio Aguilar."  *Id.* ¶ 4.

The Court attempted to use the May 13th Hearing to clarify the issues raised by Defendants' Motions.  At the Court's instruction, in addition to Plaintiff's counsel, Plaintiff himself was present and accompanied by a Spanish language interpreter.  *See* ECF No. [65].  At the opening of the Hearing, Plaintiff, when prompted by the Court, stated that his name was "Manuel Antonio Aguilar."  The Court heard argument from all parties, questioned Plaintiff's counsel, and directly questioned Plaintiff.  The Court learned the following:

Plaintiff's counsel became aware of an issue with Plaintiff's name and identification some time in December 2014, during the process of preparing for discovery.  Plaintiff revealed to his counsel that the Florida Identification Card bearing the name "Raul Aguilar" was not issued by the State of Florida and that his name was not, in fact, "Raul Aguilar."  Rather, Plaintiff informed his counsel that his name was "Manuel Antonio Aguilar."  Plaintiff provided his counsel with a State of Florida Identification Card bearing the name "Manuel Antonio Aguilar," which was issued in 1997 but had expired in May of 2001.  Plaintiff explained at the Hearing that he revealed that name and piece of identification because the Presidente Defendants had knowledge of the same.  Plaintiff's counsel made no further inquiries, either of Plaintiff or on their own, regarding Plaintiff's identity.  Plaintiff's counsel promptly contacted opposing counsel for both the United Floor and Presidente Defendants, and then prepared and filed the Motion to Amend by Interlineation.

CASE NO. 14-CIV-61605-BLOOM/Valle

At the Hearing, Plaintiff explained that he had used Guatemalan identification papers to receive the expired State of Florida Identification Card bearing the name "Manuel Antonio Aguilar."  Those Guatemalan papers contained both the last names "Aguilar" and "Salazar."  He stated that he was told by the Florida Department of Highway Safety and Motor Vehicles (the "DMV"), which issued the Florida Identification Card, that hyphenated last names were not used in the United States and that the DMV provided him identification under the name "Manuel Antonio Aguilar."  Plaintiff described this interaction with the DMV to his counsel during the week leading up to the hearing.  Curiously, the Guatemalan identification papers presented in Court reflect two surnames that are not hyphenated.

Plaintiff revealed the last name "Salazar" for the first time – to his counsel and to the Defendants – at his April 9th deposition.  Plaintiff explained that he did so because Defendants had discovered and inquired about his Wells Fargo account.  In the wake of that deposition, Plaintiff provided his counsel with a Guatemalan Consular Identification Card bearing the name "Manuel Antonio Aguilar Salazar."  In addition to Plaintiff's likeness and basic information (such as sex and birthdate), that card contains an identification number, passport number,[2] and bears a September 2018 expiration date.  Neither Plaintiff nor his counsel provided that identification or any of its information to Defendants.  Plaintiff produced the last name "Aguilar-Salazar" for the first time in this case through his April 28th Affidavit.  He explained that he did so in response to the Motions to Dismiss and in order to clarify his sole use of the last name "Aguilar" in these proceeding in contrast to his affirmation at deposition of his identification by

---

[2] Of note, Plaintiff testified at his April 9th deposition that he does not have and has never had a passport from Guatemala.  4/9/15 Dep. Tr. at 14-15.  In addition, Guatemala requires a valid Guatemalan passport for issuance of a consular identification card.  *See* U.S. GOV'T ACCOUNTABILITY OFFICE, Rep. No. GAO-04-881, *Border Security: Consular Identification Cards Accepted within United States, but Consistent Federal Guidance Needed* (Aug. 24, 2004), at 15.  *See also infra* note 2 (as to judicial notice).

CASE NO. 14-CIV-61605-BLOOM/Valle

the last name "Salazar." Plaintiff and his counsel confirmed that he provided the Guatemalan Consular Identification Card bearing the name "Manuel Antonio Aguilar Salazar" to the notary for purposes of certifying his Affidavit.

Plaintiff explained that he was issued the Guatemalan Consular Identification Card bearing the name "Manuel Antonio Aguilar Salazar" in approximately 2007. Plaintiff was residing in the United States at that time, and he was required to send Guatemalan identification papers to Guatemala in order to be issued the Consular Identification Card. Prompted by the Court as to which identification papers were used, Plaintiff displayed a Guatemalan *Cédula de Vecindad* bearing the name "Manuel Antonio Aguilar Salazar" – the document he used to obtain the Consular Identification Card.

The *Cédula* includes a personal image, fingerprint, and a series of personal information, including the identified's parentage, birthdate, birthplace, height, hair and eye color, residence, marital status, and literacy. The *Cédula* identifies Plaintiff's father's name as "Raul Aguilar." It contains a single immaterial modification from October, 2001.[3]

Plaintiff was issued the *Cédula* well before 2007. He had also used it, along with the Consular Identification Card, to open the Wells Fargo bank account. He was in possession of the *Cédula* throughout the pendency of these proceedings. It was on his person during the Hearing. The Hearing was the first time he presented the *Cédula* to his counsel, Defendants or the Court.

---

[3] Of note, Guatemala's *Registro Nacional de las Personas* (National Registry of Persons or "RENAP") began phasing out use of the *cédula de vecindad* in 2009 (due to concerns regarding falsification and deterioration), and now requires use of a *Documento Personal de Identificación* (or "DPI") for all official purposes. *See* RENAP, República de Guatemala, *¿Qué es el DPI?*, available at http://www.renap.gob.gt/¿que-es-el-dpi. *See also Henderson v. Sun Pharm. Indus., Ltd.*, 809 F. Supp. 2d 1373, 1379 (N.D. Ga. 2011) ("The Court is permitted to take judicial notice of documents made publicly available by a government entity.") (citing *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010)); *Piscatelli v. Brand*, 2014 WL 1479168, at *1 (S.D. Fla. Apr. 14, 2014) (same, citing *Henderson*); *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 399 (S.D.N.Y. 2013) (same, citing *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)); *Al-Aulaqi v. Panetta*, 2014 WL 1352452 (D.D.C. Apr. 4, 2014) ("judicial notice may be taken of public records and government documents

CASE NO. 14-CIV-61605-BLOOM/Valle

At the close of the hearing, the Court again asked Plaintiff to state his full name.  He responded:  "Manuel Antonio Aguilar Salazar."

## II.    LEGAL STANDARD

Rule 41(b) provides, in relevant part, that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  FED. R. CIV. P. 41(b).  "Rule 41(b) makes clear that a trial court has discretion to impose sanctions on a party who fails to adhere to court rules."  *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006).  The Eleventh Circuit has "articulated a two-part analysis for determining when an action should be dismissed as a sanction:  There must be both [1] a clear record of willful conduct and [2] a finding that lesser sanctions are inadequate.  *Id.* (citing *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1339 (11th Cir. 2005) ("dismissal with prejudice is plainly improper unless and until the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct")); *see also Boazman v. Econ. Lab., Inc.*, 537 F.2d 210, 212 (5th Cir. 1976) ("[D]ismissal with prejudice is such a severe sanction that it is to be used only in extreme circumstances, where there is a clear record of delay or contumacious conduct, and where lesser sanctions would not serve the best interests of justice.") (quotations omitted).

"[F]indings satisfying both prongs of [that] standard are essential before dismissal with prejudice is appropriate."  *Betty K*, 432 F.3d at 1339 (citing *Mingo v. Sugar Cane Growers Co-op. of Florida*, 864 F.2d 101, 102-03 (11th Cir. 1989)); *see also Idearc Media Corp. v. Kimsey & Associates, P.A.*, 2009 WL 928556, at *4-5 (M.D. Fla. Mar. 31, 2009) (declining to dismiss under Rule 41(b) where there was insufficient evidence that the plaintiff had fabricated evidence

---

available from reliable sources").

and if its actions were willful, and explained that, typically, "fraud . . . between the parties [is] not a subject for dismissal").[4]  However, the court's consideration of lesser sanctions need not be explicit.  *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) ("Dismissal under Rule 41(b) is appropriate where there is . . . an implicit or explicit finding that lesser sanctions would not suffice."); *Zocaras*, 465 F.3d at 484 ("we have made clear that such consideration need not be explicit").

Mere negligence or confusion is not sufficient to justify a finding of willful misconduct substantiating dismissal.  *McKelvey v. AT & T Techs., Inc.*, 789 F.2d 1518, 1520 (11th Cir. 1986).  Neither is inadvertent or isolated mistakes.  *Betty K*, 432 F.3d at 1339-40.  Nor, typically, is mere delay.  *Boazman v. Econ. Lab., Inc.*, 537 F.2d 210, 211-12 (5th Cir. 1976).

By contrast, flagrant obstruction of the discovery process, unjustified and extreme delay, and egregious misrepresentations to the court have each substantiated dismissal.  Examples of the type of misconduct which has justified dismissal with prejudice under Rule 41(b) include where:

> Plaintiff engaged in "a pattern of deception for a period of at least six years from the time [plaintiff] got the driver's license . . . through multiple arrests, convictions, and incarcerations, and filed more than thirty pleadings and motions under a false name in this case . . . [a]ll of them hid[ing] his actual identity.  Not until the pretrial proceedings were completed and a jury was in the box did the plaintiff finally own up to who he really is."  *Zocaras*, 465 F.3d at 483.

> Plaintiff failed to produce or destroyed record evidence, then "flout[ed] the district court's order to explain the spoliation, . . . intentionally misidentified a witness, ignored the court's order to release medical records, and failed to appear at a hearing for reconsideration of the court's order dismissing the case."  *Gratton*, 178 F.3d at 1375.

---

[4] Separate from this analysis, a district court may dismiss a case without prejudice under Rule 41(b), even *sua sponte*, for failure to prosecute or failure to follow court orders.  *See Hanna v. Florida*, 599 F. App'x 362, 363 (11th Cir. 2015) ("Under the Federal Rules of Civil Procedure, a court may dismiss a case when the plaintiff fails to comply with procedural rules or a court order.").

CASE NO. 14-CIV-61605-BLOOM/Valle

"[P]laintiff's counsel engaged in a pattern of delay and deliberately refused to comply with the directions of the court [including:] Despite the court's repeated insistence that plaintiff's counsel submit a preliminary statement, plaintiff's counsel failed to submit such a statement. Plaintiff's counsel also failed to appear for a pretrial conference . . . as an alternative to submitting a preliminary statement. Finally, plaintiff's counsel disobeyed the court's instruction to be ready to proceed with trial." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985).

Plaintiff and her husband had exhibited a persistent pattern of misconduct, which included fraud on the court, fabrication of evidence, perjury, and obstruction of the discovery process. *Vargas v. Peltz*, 901 F. Supp. 1572, 1574-79 (S.D. Fla. 1995).

Plaintiff (represented by the same attorneys who appear for Plaintiff in this case) engaged in obstruction of access to discoverable evidence – plaintiff failed to disclose a treating physician and subsequently lied at his deposition when questioned on the same subject. *Gonzalez v. Bus. Representation Int'l, Inc.*, 248 F.R.D. 644, 646 (S.D. Fla. 2008) (dismissing, but without prejudice).

"Plaintiff filed [his] complaint to harass and intimidate Defendants and their counsel . . . to harass Defendants and Defendants' employees and to cause Defendants monetary hardship in the course of litigation, [and] to harass and intimidate potential witnesses in [his] case." *Porton v. SP One, Ltd.*, 2015 WL 1648893, at *5 (M.D. Fla. Apr. 13, 2015) (grounding dismissal in Rule 41(b), Rule 11, and the court's inherent power, having found bad faith).

Plaintiff engaged in a clear pattern of delay for over a year, despite generous and repeated warning by the court that delay would result in dismissal. *Calloway v. Perdue Farms, Inc.*, 313 F. App'x 246, 249 (11th Cir. 2009) (affirming dismissal with prejudice of *pro se* plaintiff).

When considering alternative sanctions, the Eleventh Circuit has counseled that "[d]ismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances." *Zocaras*, 465 F.3d at 483; *see also Boazman*, 537 F.2d at 212 (explaining "that lesser sanctions would suffice in all but the most flagrant circumstances").

## III.    DISCUSSION

The record in this case is a model of willful and inexcusable misconduct by Plaintiff.[5]

---

[5] That said, and despite Defendants' urging, the facts here do not support a finding of fraud on the Court.

Having considered lesser sanctions, the Court concludes that involuntary dismissal with prejudice is the only result adequate under these circumstances.

### A.      Clear Record of Willful Misconduct

Plaintiff has perpetuated a lie regarding his true identity throughout the pendency of this litigation.  To begin with, Plaintiff filed this action under an assumed identity.  He maintained that false identity for five months – in multiple court filings (the original Complaint, Statement of Claim, First Amended Complaint and Second Amended Complaint, as salient examples) and by lying directly to Judge Valle at the October 6th settlement conference.

To some extent, Plaintiff's initial pretense is justified.  Plaintiff claims to have been an undocumented worker.  That does not upset his FLSA claims:  The Eleventh Circuit has held, unambiguously, that undocumented aliens are "employees" within the meaning of the FLSA and may recover an award of back pay and/or liquidated damages.  *Patel v. Quality Inn S.*, 846 F.2d 700, 705 (11th Cir. 1988).  Plaintiff has consistently maintained that he used false identification and social security information bearing the name "Raul Aguilar" during his employment with Defendants – and that (at least) the Presidente Defendants were complicit in or well aware that he was undocumented and that the records were fake.  Using that same name in his FLSA filings

---

"Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of the jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud upon the court."  *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978).  The Eleventh Circuit has "consistently held that a fraud between parties is not fraud on the court" even "declar[ing] . . . that perjury does not constitute fraud on the court." *Patterson v. Lew*, 265 F. App'x 767, 769 (11th Cir. 2008) (citing *S.E.C. v. ESM Grp., Inc.*, 835 F.2d 270 (11th Cir. 1988)).  "Perjury and fabricated evidence are evils that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible. . . . Fraud on the court is therefore limited to more egregious forms of subversion of the legal process . . .  those we cannot necessarily expect to be exposed by the normal adversary process."  *Idearc*, 2009 WL 928556 at *5 (quoting *Great Coastal Express v. International Broth. of Teamsters, Chauffeurs, Warehousemen*, 675 F.2d 1349, 1357 (4th Cir. 1982)).  Indeed, the adversarial process *did* reveal Plaintiff's misconduct.  That misconduct may implicate the "integrity of the judicial process." *See, e.g.*, *Ramos v. Conway*, 2014 WL 3124433, at *2 (W.D. La. July 7, 2014) (relying on the reasoning in *Zocaras* to dismiss pursuant to Rule 41(b) where plaintiff filed a civil Section 1983 lawsuit under a false name, lied under oath about his true name and birth date, and pleaded guilty to felony crime of fraudulent use of identifying information).  But Plaintiff's misconduct is not sufficiently egregious to constitute fraud on the Court.

CASE NO. 14-CIV-61605-BLOOM/Valle

can be tolerated.  However, Plaintiff's failure to disclose his "true" identity in sworn statements and testimony is inexcusable.

At least as far back as December 2014, Plaintiff knew that he needed to come clean about the fabrication of the name and documentation supporting his identity as "Raul Aguilar." Plaintiff engaged in a discussion with his counsel – ostensibly at some point between the filing of the Second Amended Complaint and when Plaintiff's counsel notified Defendants in anticipation of filing the Motion to Amend by Interlineation – as part of the discovery process.  Plaintiff revealed that he was not "Raul Aguilar" and that the "Raul Aguilar" Florida Identification Card was a forgery.  He then provided his counsel with the "Manuel Antonio Aguilar" Florida Identification Card – which reflected an expiration date of May 12, 2001.  He did not provide his attorney the Guatemalan Consular Card that is *not* expired and bears an expiration date in 2018. Nor did Plaintiff disclose the *Cédula*, which Plaintiff possessed since at least 2007 and which he used to obtain the Consular Card and open his Wells Fargo account.  Both of those documents would have revealed the name, "Manuel Antonio Aguilar Salazar."  Curiously, his counsel neglected to ask Plaintiff for a current, valid form of identification when faced with the expired Florida I.D. Plaintiff's counsel.  This was after it was revealed that his client had used a false identity and forged documentation both for employment purposes *and* to support this litigation. Nor did counsel conduct any inquiry on their own.  Taking merely Plaintiff's word, counsel notified Defendants and the Court in late December, 2014, that Plaintiff's real and full name was "Manuel Antonio Aguilar," and proceeded with the case as if it were.

Plaintiff has attempted to explain his decision not to reveal the last name "Salazar" or any documentation containing that name based on his experience with the Florida DMV in the late-90s.  Again, Plaintiff maintains that he used Guatemalan identification papers bearing both the

16

CASE NO. 14-CIV-61605-BLOOM/Valle

last names "Aguilar" and "Salazar" to obtain his Florida Identification Card from the DMV.  He claims that the DMV told him that hyphenated last names are not used in this country and the Identification Card that was issued to him bore only the last name "Aguilar."  It may, at first blush, appear plausible that a hyphenated last name could create legitimate confusion when "translated" into documentation.  Or that someone could, as Plaintiff claims in his Affidavit, consider use of only the precedential last name as proper.  But even accepting Plaintiff's purported interaction with the DMV as true, Plaintiff's explanation doesn't hold water.  First, Plaintiff had the opposite experience with Wells Fargo some ten years later.  He used the Guatemalan Consular Card and the *Cédula* to open an account at Wells Fargo, and was issued banking identification and account information containing the last name "Salazar."  Second, the DMV's supposed policy fails to explain Plaintiff's determination not to provide his counsel any valid or current form of identification when dealing specifically with his true identity as part of this litigation.  Nor does it explain or excuse his failure to disclose his surname as "Aguilar Salazar" in multiple pleadings and sworn answers.  Plaintiff is sophisticated enough to know, as was noted at the Hearing, that the post-9/11 climate made it impossible for him to obtain a replacement Florida Identification Card (again, assuming the validity of the first one).  That card being invalid, he knew that he had needed to use his Guatemalan identification papers to open his Wells Fargo account.  Yet he still decided not to use the Guatemalan papers or to reveal his full name to his counsel, Defendants or the Court.

Plaintiff used the name "Raul Aguilar" and presented the same forged Florida I.D. at his first sworn deposition in March of 2015.  He did the same yet again at his second deposition on April 9, 2015.  Plaintiff admitted to the last name "Salazar" at that deposition only because Defendants had discovered the Wells Fargo account.  This was first time that this last name was

17

CASE NO. 14-CIV-61605-BLOOM/Valle

disclosed, even to Plaintiff's own counsel.[6]  His explanation of his use of the name "Manuel Antonio Salazar" at that deposition is as unconvincing as it is inconsistent.  Again, he testified that he opened and maintained a bank account with Wells Fargo under the name "Manuel Antonio Salazar" – which he affirmed was his "full name from Guatemala."  In his Affidavit, Plaintiff explained away that testimony by noting that "Manuel Antonio Salazar is a 'full' name in that it includes a first, middle and last name."  Yet at the Hearing, he claimed that his nerves caused him to misstate the name "Manuel Antonio Salazar" at the deposition.  Those two explanations can't both be true.  If it's the latter, why not just say so in the Affidavit?  And the former, especially in light of the latter, smacks of a cover-up for having failed to reveal the name "Salazar" in the first place.  After all, Plaintiff shouldn't require much assistance remembering his own name.

Plaintiff's clarification that his "birth name" is "Manuel Antonio Aguilar-Salazar" did not appear in these proceedings until his April 28, 2015 Affidavit.  The Affidavit itself is riddled with inconsistencies and wrapped in unreliable attestations.  In it, Plaintiff states his name to be "Manuel Antonio Aguilar."  It is signed by "Manuel Antonio Aguilar."  But Plaintiff uses the Affidavit to explain that "Manuel Antonio Salazar" is also one of his "full" names.  He then clarifies that "Manuel Antonio Aguilar-Salazar" is his "birth name."   The Affidavit is

---

[6] It is worth noting the response of the court reporter at the April 9th deposition once Plaintiff revealed that "Raul Aguilar" was an alias and the Florida Identification Card Plaintiff had provided at the start of the deposition was a forgery:

> I had asked earlier for your identification and you presented me with a Florida I.D. for Raul Aguilar.  I wrote the number down, and I have a responsibility as a notary public to record those identifications and keep a record of them.  Once I realized that this identification was false through your testimony . . .  By admission of the witness it was not a real identification, I had to alert the attorneys and let them know so they could proceed accordingly that there could be an issue with the oath and the record.

4/9/15 Dep. Tr. at 16-17.  Taking her professional and ethical obligations seriously, the court reporter articulated what, apparently, no one on Plaintiff's side of the table could:  there's something plainly wrong with lying about your name on the record.

acknowledged by the same translator who signed the Interrogatory Responses (which Plaintiff testified to having never seen or heard in any language).  However, this time, the translator seems to have "personally known" Plaintiff (by one of his new names).  The same employee of Plaintiff's counsel who provided the questionable notarization of the Interrogatory Responses (using the fake Florida identification) notarized the Affidavit, purportedly using Plaintiff's Guatemalan Consular Identification Card.  Of course, that card bears the name "Manuel Antonio Aguilar Salazar," not "Manuel Antonio Aguilar."

Pausing for a moment, "Manuel Antonio Aguilar-Salazar" is Plaintiff's purported "birth name."  That is, his name since birth.  Hardly a fact new to Plaintiff.  To emphasize the gamesmanship, Plaintiff possessed his Consular Identification Card since at least 2007.  He had used it for official if not governmental purposes in the United States.  He was in possession of it throughout the pendency of this litigation.  But he confessed to his true "birth name" and the existence of the Consular I.D. only after Defendants had uncovered Plaintiff's use of his last name "Salazar" in opening a bank account.

It is not even readily apparent to the Court that Plaintiff's Consular Identification Card is itself authentic.  The card contains a passport number.  Indeed, a Guatemalan passport is required for issuance of a Guatemalan Consular Identification Card.  But Plaintiff has testified that he does not have, and never has had, a Guatemalan passport.  Yet again, either Plaintiff replied with false information when presented with straightforward and unambiguous questions during his sworn deposition, or he provided a forged piece of identification to the Court at the Hearing.

At the Hearing, Plaintiff referred to other Guatemalan identification papers he had used, both to obtain the Consular I.D. and to open the Wells Fargo account.  The Court asked about those papers.  Plaintiff reached into his pocket and pulled out the *Cédula*.  He had never shown

CASE NO. 14-CIV-61605-BLOOM/Valle

that document to his counsel, let alone produced it to Defendants or used it for identification or authentication in any proceeding or filing related to this action.  The *Cédula* appears to be the most comprehensive identifying documentation available to Plaintiff.  It includes a personal image, fingerprint, and a series of personal information, including the identified's parentage, birthdate, birthplace, height, hair and eye color, residence, marital status, and literacy.  It does not contain an expiration date.  By his own statements, Plaintiff needed it to obtain the Consular I.D.  He needed it to open the Wells Fargo account.  But, apparently, he saw no need to supply it or the critical information it purports to verify – his full name – to anyone involved in this litigation until the Court happened upon it at the May 13th Hearing.[7]

Plaintiff walked into the Hearing knowing that his identity was the central issue under consideration.  The Court asked him to state his name.  He said "Manuel Antonio Aguilar." After nearly two hours of explanation and equivocation but without hearing any coherent or legitimate justification, the Court again asked the same question.  Plaintiff changed his mind: "Manuel Antonio Aguilar-Salazar."

All told, the record here exhibits an undeniable and purposive pattern of obfuscation and misinformation by Plaintiff regarding his own name.  The Court is forced to conclude that Plaintiff's deception was deliberate and willful.  Plaintiff was provided a series of opportunities to set the record straight.  He decided not to do so, but rather, at each turn, continued to perpetuate and deepen the deception.

Plaintiff's misconduct falls squarely within the behavior justifying dismissal with prejudice under Rule 41(b) – deliberate and repeated obstruction of the discovery process,

---

[7] The fact that the *cédula de vecindad* is no longer accepted in Guatemala (and the reasons for its discontinuation, including the ease of counterfeiting) leaves the Court wondering if even this document is fully accurate.

CASE NO. 14-CIV-61605-BLOOM/Valle

including concealment of evidence, providing misinformation and perjury, ultimately resulting in substantial and unjustified delay. *See Gratton*, 178 F.3d at 1375 (spoliation, intentional misidentification); *Vargas*, 901 F. Supp. at 1578-79 (obstruction of discovery, fabrication of evidence, perjury); *Gonzalez*, 248 F.R.D.at 646 (obstruction of access to discoverable evidence); *Goforth*, 766 F.2d at 1535 (pattern of deliberate delay); *Calloway*, 313 F. App'x at 249 (unjustified delay). The facts in *Zocaras*, where the Eleventh Circuit affirmed involuntary dismissal with prejudice under Rule 41(b), are strikingly similar to the case at bar. There, the plaintiff followed a pattern of deception for years and through multiple proceedings of hiding his true identity – "[n]ot until the pretrial proceedings were completed and a jury was in the box did the plaintiff finally own up to who he really is." *Zocaras*, 465 F.3d at 483. Plaintiff's case may not be as far along, but the implications are identical. Plaintiff lied about and hid his true identity, on purpose, over and again, from Defendants and the Court. He defeated Defendants' discovery efforts and upended these proceedings. He did not own up to who he really is until pressed by the Court (if even then).

The first prong in the Rule 41(b) analysis is clearly satisfied. There is a clear record of willful misconduct.

It also bears noting that counsel for Plaintiff are no strangers to discovery sanctions and Rule 41(b) dismissal. This is not the first time Plaintiff's counsel unsuccessfully defended their actions and their clients' from such meritorious accusations. Or even the second. In *Rodriguez v. Marble Care Int'l, Inc.*, 863 F. Supp. 2d 1168 (S.D. Fla. 2012), the same lawyers who appear for Plaintiff here were sanctioned for failing to engage in proper pre- and post-suit investigation, resulting in the filing and maintenance of a frivolous FLSA case. In *Gonzalez v. Bus. Representation Int'l, Inc.*, 248 F.R.D. 644 (S.D. Fla. 2008), the plaintiff – represented by the

CASE NO. 14-CIV-61605-BLOOM/Valle

same attorneys who appear for Plaintiff here – engaged in obstruction of and denied access to discoverable evidence, resulting in dismissal without prejudice pursuant to Rule 41(b).

### B.   Inadequacy of Lesser Sanctions

Having weighed possible alternatives, the Court concludes that no sanction less than involuntary dismissal with prejudice is appropriate here.

"Dismissal with prejudice is . . . an extreme sanction, but it is justified in extreme circumstances.  This is another way of saying that the sanction imposed should fit the interests jeopardized and the harm caused by the violation."  *Zocaras*, 465 F.3d at 485.  In this light, dismissal with prejudice is warranted where "[n]othing short of putting the plaintiff out of court will properly punish his serious and protracted violation of the rules and adequately deter future violations by other parties.  *Id*. at 484.

It goes without saying that a plaintiff's identity is central to any civil litigation.  That centrality is magnified in the instant FLSA context.  Plaintiff's misinformation prevented Defendants from investigating Plaintiff's FLSA claims – from, for example, accessing Plaintiff's employment records and comparing those against Plaintiff's possible employment elsewhere at the time of his claimed employment with Defendants.  This issue is not hypothetical.  There is an overlap between the time claimed by Plaintiff here and the time claimed by Plaintiff in the *Tropical* Suit; together, he claims to have worked some 135 hours in the same week.  That may be just the tip of the iceberg.  Defendants just found out Plaintiff's full birth name (again, assuming that information is fully accurate).  Certainly from their perspective, Plaintiff's credibility is now at issue.  At the very least, were this case to go forward, Defendants would need to propound new interrogatories, scrutinize the new responses, undertake a new investigation of the facts behind Plaintiff's stated claims (for example, looking through any case

involving any combination of Plaintiff's various aliases to verify or controvert Plaintiff's claimed hours and wages), and depose not only Plaintiff but everyone involved in the case.[8]  Defendants are correct.  Plaintiff has rendered the entirety of discovery in this matter, and the time spent and effort expended to pursue it, useless.  Effectively, to go forward, the Court would have to hit reset.

Any lesser sanction here – as examples, requiring Plaintiff (and his counsel) to pay for all of Defendants' legal fees incurred in this case to date, or dismissal without prejudice – would reward Plaintiff with a do-over.  The price paid for misinforming opposing parties and the Court through the pleading and discovery stages would be, as just one example, the gift of entering a deposition armed with the knowledge of Defendants' litigation strategy and able to avoid past mistakes.  Such a sanction would ill "fit the interests jeopardized and the harm caused." Dismissal, with prejudice, would.  *See Zocaras*, 465 F.3d at 485; *see also Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003). ("Filing a case under a false name deliberately, and without sufficient justification, certainly qualifies as flagrant contempt for the judicial process and amounts to behavior that transcends the interests of the parties in the underlying action.").

## IV.    CONCLUSION

Personal identity may be complex – fluid or contextual and evolving over time.  But litigation is not a forum for a plaintiff's self-discovery.  A person cannot hide or change his identity to suit his purposes without making a mockery of those who rely upon it – here, opposing litigants and the integrity of the judicial process itself.  Plaintiff's willful misconduct is clear from the record here.  No lesser sanction other than involuntary dismissal with prejudice is

---

[8] The Court notes that Defendants have consistently denied liability with respect to all of Plaintiff's FLSA claims, reject the factual allegations which support them, and have worked diligently to lay the groundwork and eventually present argument for judgment in their favor on the merits.

CASE NO. 14-CIV-61605-BLOOM/Valle

adequate.  For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1.     The Motions to Dismiss, ECF Nos. [55] and [56] are **GRANTED**.

2.     Plaintiff's Second Amended Complaint, ECF No. [30], is **DISMISSED with prejudice**, pursuant to Fed. R. Civ. P. 41(b), as are any related claims asserted by Plaintiff under any alias.  This dismissal does not affect claims asserted by Plaintiff on behalf others similarly situated, under 29 U.S.C. § 216(b).

3.     The United Crew Defendants' Motion for Protective Order, ECF No. [67], is **DENIED AS MOOT**.

4.     Any other pending motions are **DENIED AS MOOT**.  Any pending deadlines are **TERMINATED**.

5.     The Clerk is directed to **CLOSE** this matter.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 20th day of May, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

24